**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**CHRISTOPHER JERMAINE TAYLOR,**           )
                                           )
       **Movant,**                      )
                                           )       **Civil Action No. 3:16-05173**
**v.**                                     )       **Criminal Action No. 3:15-0009**
                                           )
**UNITED STATES OF AMERICA,**              )
                                           )
       **Respondent.**                  )

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following: (1) Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Document No. 68); (2) Movant's Amendment pursuant to <u>Johnson</u> (Document No. 71); (3) Movant's Motion to Withdraw Amendment (Document No. 108); and (4) Movant's Second Amendment (Document No. 109). By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 69.)

**FACTUAL BACKGROUND**

**A.**    **Criminal Action No. 3:15-0009:**

On February 3, 2015, Movant pled guilty to a single count Information charging him with conspiracy to distribute 100 grams or more of heroin in violation of 21 U.S.C. 846. (Criminal Action No. 3:15-0009, Document Nos. 5, 8, and 10.) A Presentence Investigation Report was prepared. (<u>Id.</u>, Document No. 55.) The District Court determined that Movant had a Base Offense Level of 30, and a Total Offense Level of 33, the Court having applied the following: A two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous

weapon; A two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for purposes of manufacturing or distributing heroin; A two-level enhancement pursuant to U.S.S.G. 3B1.1(c) for being a leader or organizer of criminal activity; and A three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b).[1] (Id., Document Nos. 48 and 55.) The District Court sentenced Movant on September 8, 2015, to serve a total term of 138-months imprisonment, to be followed by a four-year term of supervised release. (Id., Document Nos. 44 and 47.) The District Court also imposed a $100 special assessment. (Id.)

On September 16, 2015, Movant filed a Notice of Appeal. (Id., Document No. 50.) Subsequently, the United States filed a Motion to Dismiss arguing that the appeal was barred by Movant's waiver of the right to appeal included in the plea agreement. (Id., Document No. 64.) By Order and Judgment filed on February 25, 2016, the Fourth Circuit granted the United States' Motion finding that Movant "knowingly and voluntarily waived his right to appeal and that the issues [Movant] seeks to raise on appeal fall squarely within the compass of his waiver of appellate rights." (Id., Document Nos. 64 and 65.)

**B.    Section 2255 Motion:**

On June 8, 2016, Movant, acting *pro se*, filed his instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.[2] (Civil No. 3:16-05173, Document No. 68.) As grounds for *habeas* relief, Movant argues as follows:

---

[1] The District Court determined that Movant was subject to the advisory guideline range of 151 to 188 months. (Criminal Action No. 3:15-00009, Document No. 48.) The District Court sentenced Movant below the advisory Guideline Range. (*Id.*)

[2] Because Movant is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed

2

1.      The [Movant] was denied effective assistance of counsel at all stages of the proceeding when his attorneys failed to object to the constructive amendment of the Bill of Information to which the [Movant] pled, which the penalty of the offense changed rendering his guilty plea void and invalid.

2.      The [Movant] was denied effective assistance of counsel at all stages of the proceeding when his attorneys failed to object or correct an error of fact in the plea agreement which made the plea agreement ambiguous.

3.      The [Movant] should be allowed to withdraw his guilty plea or to have what he believed to be the terms of his plea agreement enforced, where he was misled by his attorney and the government.

(Id.)

On June 17, 2016, Movant filed his Amendment to his Section 2255 Motion citing Johnson v. United States, 135 S.Ct. 2251 (2015). (Id., Document No. 71.) Specifically, Movant argues that Johnson applies to his two-point gun enhancement under U.S.S.G. § 2D1.1 (Id.) On October 22, 2018, Movant filed his "Motion to Withdraw Amendment to 28 U.S.C. § 2255 Habeas Corpus Motion for Johnson v. United States, 135 S.Ct. 2251 (2015), Which Has Been Applied to Two-Point Gun Enhancement." (Id., Document No. 108.) In support, Movant states that "after careful research, he realizes that Johnson . . . does not possess any applicability to his case and the application of the two-point gun enhancement under 2D1.1(b)(1)." (Id.)

Also on October 22, 2018, Movant filed his "Second Amendment to 28 U.S.C. § 2255 to Address the Applied 2D1.1(b)(1) Two-Point Gun Enhancement and Submit Additional Transcript Evidence of Misleading and Ineffective Assistance of Counsel." (Id., Document No. 109.) Movant argues that the two-point gun enhancement was applied in error. (Id.) Movant explains that firearm located at the residence in Detroit, Michigan, was applied to him in error. (Id.) In support, Movant argues as follows: (1) The government provided no information or

---

liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

evidence that Movant lived at the residence in Detroit, Michigan; (2) Lakeisha S. Williams testified under oath that Movant did not live at the residence in Detroit Michigan; (3) Trial counsel failed to subpoena the individual "who attempt to take ownership of the firearm located in Detroit, Michigan;" and (4) Trial counsel was ineffective "for failing to present to the court that Agent Adrian Rosario testified on September 8, 2015, at Petitioner's sentencing hearing that he could not connect the firearm located in Detroit, Michigan to the scope of the drug conspiracy or any other illegal activity." (Id.) Movant, therefore, argues that the Government failed to present sufficient evidence from which it could be reasonably concluded that Movant possessed a dangerous weapon during any illegal drug activity. (Id.) Therefore, Movant argues that it "was clearly improbable that the firearm was connected with the charged offense, and therefore should not have been applied to increase the sentencing of [Movant]." (Id.) Finally, Movant states that "transcripts from the date of May 11, 2015, page 7 shows that he was misled to believe that he would be sentenced to a base offense level of 30, including the three-point reduction for acceptance of responsibility, providing [Movant] with a sentencing guideline range of 78 – 97 months, category 2." (Id.)

## DISCUSSION

The relevant portion of Section 2255 provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion made pursuant to Section 2255 is a collateral attack on a conviction or sentence. To

succeed on a Section 2255 motion, the movant must prove that "his sentence or conviction was imposed in violation of the Constitution or law of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack." 28 U.S.C. § 2255. "A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States, 2006 WL 36859, * 2 (E.D.Va. Jan. 4, 2006).

The filing of a Section 2255 motion does not supplant or obviate the need to file a direct appeal. Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947). The United States Supreme Court explains that "a final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982). A non-constitutional claim that could have been, but was not, raised on direct appeal may not be raised for the first time in a Section 2255 motion. Stone v. Powell, 428 U.S. 465, 478 fn. 10, 96 S.Ct. 3037, 3044 fn. 10, 49 L.Ed.2d 1067 (1976). A constitutional claim that could have been, but was not, raised on direct appeal may not be raised for the first time in a Section 2255 motion unless the movant can show either (1) "cause and actual prejudice resulting from the errors of which he complains," or (2) "he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. at 493. Actual prejudice is shown by demonstrating that the error

5

worked to movant's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997)(quoting Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986)). "In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence. Mikalajunas, 186 F.3d at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent. Id. at 494. The movant must show that "it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Furthermore, a movant may not reassert a claim decided on direct review. In Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.)(per curiam), cert. denied, 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976), the Court held that a defendant "will not be allowed to recast, under the guise of a collateral attack, questions fully considered [on appeal]." An exception exists, however, when there has been an intervening change in the law which justifies consideration of a prior determination. See Davis v. United States, 417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974).

1.    **Ineffective Assistance of Counsel:**

Indigent criminal defendants have the constitutional right to effective assistance of counsel through direct appeal. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) When a movant claims ineffective assistance of counsel as a basis for seeking relief under Section 2255, the burden is on the movant to prove that his trial attorney failed to render

6

effective assistance. <u>Strickland v. Washington</u>, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In <u>Strickland</u>, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. <u>Id.</u> The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. <u>Strickland</u>, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .. [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

<u>Strickland</u>, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. <u>Goodson v. United States</u>, 564 F.2d 1071, 1072 (4th Cir. 1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694, 104 S.Ct. at 2068; <u>Hill v. Lockhart</u>, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. <u>Murray v. Carrier</u>, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not

7

constitutionally ineffective under the standard established in <u>Strickland v. Washington</u>, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") The movant must therefore show (1) that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. <u>Strickland</u>, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; <u>Fitzgerald v. Thompson</u>, 943 F.2d. 463 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992).

     **A.    Counsel's alleged ineffectiveness regarding unknowing plea:**

     In his Motion, Movant first alleges that his plea was made unknowingly because trial counsel allowed "the constructive amendment of the Bill of Information to which [Movant] pled, which caused the penalty of the offense to change rendering his guilty plea void and invalid." (Civil Action No. 3:16-05173, Document No. 68, p. 4.) Specifically, Movant claims that the United States amended the Information as follows: (1) "added a penalty not mentioned in the information (where the government included the penalty of 841(b)(1)(B) 5 to 40, and 100 grams of heroin under the 2014 guidelines does not have a mandatory minimum sentence of five years, and falls under 841(b)(1)(C)); and (2) "modified the drug amount from 100 grams to 1 to 3 kilograms." (<u>Id.</u>, p. 6.) Movant argues that based on his guilty plea to the Information, his "drug amount was stated at 100 grams and under the 2014 sentencing guidelines his base offense level was 24 with no mandatory minimum." (<u>Id.</u>)

     Second, Movant argues that counsel was ineffective in failing "to object or correct an

error of fact in the plea agreement which made the plea agreement ambiguous." (Id., p. 4.)

Movant argues that his plea agreement was "ambiguous where the plea agreement reads in part: (1) conspiracy to distribute 100 grams or more of heroin (id at pg 2), and (2) at least 400 grams of heroin and not more than 3 kilograms of heroin (id at pg 4)." (Id., p. 7.) Movant claims that due to the "ambiguous language," he was "exposed to two different penalties under the 2014 sentencing guidelines." (Id.) Finally, Movant argues that he should be allowed to withdraw his guilty plea because he was "misled by his attorney and the government." (Id., pp. 5 and 8.)

A guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970). The United States Supreme Court held in Mabry v. Johnson, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546 - 47, 81 L.Ed.2d 437 (1984), "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Once a criminal defendant has pled guilty, collateral review is limited to an examination of "whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L.Ed.2d 927 (1989); see also Fields v. Attorney General of State of Md., 956 F.2d 1290, 1294 - 95 (4th Cir. 1992). A guilty plea will be deemed involuntary if it is entered without knowledge of material information withheld by the prosecution. See for example Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995)(A defendant challenging the voluntariness of a guilty plea may assert a claim under Brady that the prosecution withheld evidence favorable to the defendant and material to guilt or punishment when defendant requested it.).

The undersigned finds that Movant's above argument that his guilty plea was made

unknowingly because the United States "amended" the Information and the plea agreement was ambiguous regarding Movant's sentencing exposure, is without merit. A review of the record reveals that Movant's guilty plea was voluntary and made with full knowledge of its consequences. The written plea agreement provided that "Mr. Taylor will plead guilty to a violation of 21 U.S.C. § 846 (conspiracy to distribute 100 grams or more of heroin) as charged in said information." (Criminal No. 3:15-00009, Document No. 10, p. 2.) The Information was attached as Exhibit A. (Id., p. 8.) The Information charged that Movant "knowingly conspired to commit offenses in violation of 21 U.S.C. § 841(a)(1), that is knowingly and intentionally to distribute 100 grams or more of heroin, a Schedule I controlled substance . . . [i]n violation of Title 21, United States Code, Section 846." (Id.) The written plea agreement spelled out the maximum sentence to which Movant was subject by virtue of his plea. (Id., p. 2.) Specifically, the plea agreement stated that Movant faced a term of "imprisonment for a period of not less than 5 years nor more than 40 years." (Id.) Paragraph 11 of the plea agreement further set forth Movant's and the United States' agreement as to the application of the United States Sentencing Guidelines. (Id., pp. 4 – 5.) Specifically, the United States and Movant agreed as to the following: (1) The application of a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(12) (Maintaining a premises); (2) The application of a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) (Aggravating Role); (3) The United States and Movant reserved the right to argue for and against the application of a two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1); (4) The United States agreed that the total drug weight attributable to Movant was not more than 3 KG of heroin and reserved the right to argue for a Base Offense Level of no more than 30; and (5) Movant agreed that the total drug weight attributable to him

10

was at least 400 G of heroin and reserved the right to argue for a Base Offense Level of no less than 26. (Id., pp. 4 – 5.) Further, the plea agreement specifically stated that the United States and Movant acknowledged and understood that the Court and the Probation Office were <u>not</u> bound by their above agreement concerning the calculation of the Sentencing Guidelines "and the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range." (Id., p. 5.) Finally, the plea agreement stated at Paragraph 14 that "[t]he matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to the specific sentence." (Id., p. 6.)

During Movant's plea hearing, Movant acknowledged that he signed the plea agreement and initialed each page. (Criminal Action No. 3:15-00009, Document No. 31, p. 18.) Movant further confirmed that he understood the terms of the plea agreement. (Id., pp. 32 – 40.) Concerning the total drug weight attributable to Movant, the follow colloquy occurred between the District Court and Movant:

> Q:    All right. Then the last couple - - well, the next to the last paragraph says that the parties agree that the total amount of offense and relevant conduct attributable to Mr. Taylor is at least 400 grams but less than 3 kilos of heroin. Do you understand that?

> A:    Yes.

> Q:    Do you understand that that means that the Court could hold you responsible at sentencing for sentencing guidelines that are equal to a base offense level based on at least 400 grams of heroin?

> A.    Yes.

> Q:    All the way up to 3 kilograms of heroin.

> A.    Yes.

(<u>Id.</u>, pp. 25 – 26.) Concerning his sentencing exposure, the District Court questioned Movant as follows:

> Q.    Do you understand you expose yourself to a mandatory minimum sentence of at least five years in prison and a maximum of up to 40 years in prison?
>
> A.    Yes.
>
> * * *
>
> Q.    Now, have you and your lawyer discussed the sentencing guidelines and how they might apply to your case?
>
> A.    Yes.
>
> Q.    Do you understand the Court cannot determine the guideline range for your case until a presentence report is completed and both sides have a chance to review it and challenge it if you think it's wrong?
>
> A.    Yes.
>
> Q.    Do you understand that the sentence I may impose could be different from any estimate your lawyer has given you?
>
> A.    Yes.
>
> Q.    Do you understand that although I have to consider the sentencing guidelines, I can impose a sentence that is more severe or less severe than the guidelines would call for?
>
> A.    Yes.
>
> * * *
>
> Q.    Do you understand that you and the Government have reserved the right to argue for and/or against applying two-level enhancement for possession of a firearm and that the Government agrees that the total drug weight attributable to you should not be more than 3 kilograms of heroin and reserves the right to argue for a base offense level of not more than 30, and that you've agreed that the total drug weight for sentencing purposes should be at least 400 kilograms of heroin, and you reserve the right to argue for a base offense level of no less than 26?
>
> A.    Yes.
>
> Q.    Now, do you understand that while you and the Government have agreed on these guideline provisions, the probation office and the Court are not bound by that agreement and you will have no right to withdraw from the

plea agreement just because you disagree with my calculation of the sentencing guideline range?

A.     Yes.

(Id., pp. 33 - 36.) Based on the foregoing, the undersigned finds that Movant's guilty plea was voluntary and made with full knowledge of its consequences. There is no indication that Movant's Information was improperly amended by the United States or that the plea agreement was ambiguous regarding Movant's sentencing exposure. Accordingly, the undersigned finds Movant's allegation that his plea was entered in to unknowingly due to ineffective assistance of counsel is without merit.

**B.     Counsel's alleged ineffectiveness regarding sentencing:**

In his Second Amendment to his Section 2255 Motion, Movant challenges the validity of his sentence by alleging ineffective assistance of counsel. (Civil Action No. 2:16-05173, Document No. 109.) Movant argues that the two-point gun enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) was applied in error due to ineffective assistance of counsel. (Id.) Specifically, Movant challenges the finding that he possessed the firearm located at the residence in Detroit, Michigan. (Id.) First, Movant argues that trial counsel failed to subpoena the individual "who attempt to take ownership of the firearm located in Detroit, Michigan." (Id.) Second, Movant argues that trial counsel was ineffective "for failing to present to the court that Agent Adrian Rosario testified on September 8, 2015, at Petitioner's sentencing hearing that he could not connect the firearm located in Detroit, Michigan to the scope of the drug conspiracy or any other illegal activity." (Id.)

*(i)     Failure to call witness.*

"[T]he decision whether to call a defense witness is a strategic decision demanding the

assessment and balancing of perceived benefits against perceived risks, and on to which we must afford enormous deference." United States v. Terry, 366 F.3d 312, 317-18 (4th Cir. 2004)(counsel's decision not to call certain witnesses was reasonable based upon his professional judgment); also see Strickland, 466 U.S. at 690, 104 S.Ct. at 2065("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); United States v. Champman, 593 F.3d 365, 369 (4th Cir. 2010)(even if defendant disagrees, "which witnesses to call is a classic tactical decision left to counsel"); United States v. Best, 219 F.3d 192, 201 (2nd Cir. 2000)(the failure to call witnesses, even those who might offer mitigating evidence, is not ordinarily viewed as a lapse in professional judgment); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977)(the failure to call witnesses is a tactical decision that generally does not amount to ineffective assistance of counsel. It is well recognized that tactical decisions, such as which witness to call, are "virtually unchallengeable." Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009)(quotation marks omitted); United States v. Orr, 636 F.3d 944, 955 (8th Cir. 2011)("[W]e consistently have affirmed that a defense counsel's decision not to call a witness is a virtually unchallengable decision of trial strategy."); Hall v. Thomas, 611 F.3d 1259, 1293 (11th Cir. 2010)("[T]he decision concerning which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008)("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney."). Furthermore, Movant fails to allege any facts supporting his claim that counsel was unreasonable in his failure to subpoena "the individual who attempted to take ownership of the firearm located in Detroit, Michigan" or how he was prejudice by such. See

Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990)(petitioner must proffer evidence of what the witnesses' testimony would have been and cannot establish ineffective assistance of counsel based on a general claim that additional witnesses should have been called); United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991)(a defendant who faults counsel for not calling a witness cannot simply state the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance of counsel claim); Slate v. Vargo, 2014 WL 3378627, * 7 (E.D.Va. July 8, 2014)("In federal jurisprudence it is well established that a claim of ineffective assistance predicated on the failure to call witnesses fails where affidavits verifying the witnesses' testimony are not provided."); Johnson v. McCall, 2010 WL 936726, * 4 (D.S.C. March 15, 2010)("[M]ere speculation what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice.") Movant neither identifies the possible witness by name nor provides an affidavit verifying the witnesses' possible testimony. Even assuming the unidentified witness would have provided testimony claiming ownership of the firearm seized from the Michigan residence, Petitioner fails to explain how such resulted in prejudice. Testimony concerning the "ownership" of the firearm does not contradict testimony that Movant "possessed" the firearm. Specifically, Movant does not dispute Agent Rosario's testimony that on the day the firearm was seized from the bedroom of the Michigan residence where Movant was located, that Movant stated that the reason for the gun was "to protect himself, his girlfriend, and his child" because his girlfriend's "purse was stolen, and he was afraid that the individuals who stole it had their address and he was afraid of being robbed." (Criminal Action No. 3:15-00009, Document No. 57, pp. 117 - 118.) Defense counsel further elicited testimony from Detective Rosario acknowledging that even though a firearm was located

during the search of the Michigan residence, no drugs or large sums of money were located at that time. (Id., p. 133.) Defense counsel was clearly proceeding upon the defense theory that although Movant may have possessed a firearm, the firearm was not possessed in connected with drug activity. Specifically, defense counsel argued as follows:

> The other thing to bear in mind is that there's no money and there's no drugs in the house when the search warrant was seized. We know that for a fact. Mr. Taylor told the police on the night he was arrested he had it to protect his family. It is clearly improbable that gun at that time was connected to the drug activity because there was none. And so, I think that that gun, while we do not deny that it was in Mr. Taylor's bedroom at that residence, has not be connected to the drug activity before the Court.

(Id., p. 146.) Based upon a review of the record, the undersigned finds that the defense counsel's decision to not call as a witness "the individual who attempted to take ownership of the firearm" was objectively reasonable under the totality of the circumstances. Furthermore, the undersigned finds that Movant cannot establish prejudice as mere testimony as to another person's ownership of a firearm does not disprove that Movant had possession of the firearm.[3] Accordingly, the undersigned respectfully recommends that Movant's above claim be denied.

### (ii)    Failure regarding Agent Rosario's testimony.

Second, Movant argues that trial counsel was ineffective "for failing to present to the court that Agent Adrian Rosario testified on September 8, 2015, at Petitioner's sentencing hearing that he could not connect the firearm located in Detroit, Michigan to the scope of the drug conspiracy or any other illegal activity." (Document No. 109, p. 2.) Movant's above claim is

---

[3] Furthermore, the undersigned notes the District Court determined that Movant possessed a firearm at the 1002 12th Avenue residence **and** the Michigan residence. Movant, however, does not challenge the District Court's finding that Movant possessed a firearm in relation to his drug activity at the 1002 12th Avenue residence. U.S.S.G. § 2D1.1(b)(1) provides that a two-level enhancement should be applied "[i]f a dangerous weapon (including a firearm) was possessed." Thus, Movant's sentence was properly enhance based on the 1002 12th Avenue address.

16

without merit. As stated above, defense counsel elicited testimony from Detective Rosario acknowledging that even though a firearm was located during the search of the Michigan residence, no drugs or large sums of money were located at that time. (Criminal Action No. 3:15-00009, Document No. 57, p. 133.) Defense counsel clearly argued that although a gun was found during the search of the Michigan residence, there was no evidence that the gun was connected to drug activity. (Id., p. 146.) Accordingly, the undersigned finds that Movant's above claim is without merit.

**2.** __Error in Sentencing__:

In his Second Amendment to his Section 2255 Motion, Movant challenges the validity of his sentence based upon the two-point gun enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). (Civil Action No. 2:16-05173, Document No. 109.) Specifically, Movant contends that District Court erred in finding that Movant possessed the firearm located at the residence in Michigan. (Id.) In support, Movant argues as follows: (1) The government provided no information or evidence that Movant lived at the residence in Detroit, Michigan; and (2) Lakeisha S. Williams testified under oath that Movant did not live at the residence in Detroit, Michigan. (Id.) Movant concludes that the Government failed to present sufficient evidence from which it could be reasonably concluded that Movant possessed a dangerous weapon during any illegal drug activity. (Id.) Therefore, Movant argues that it "was clearly improbable that the firearm was connected with the charged offense, and therefore should not have been applied to increase the sentencing of [Movant]." (Id.)

The undersigned notes that by his written plea agreement, Movant agreed to waive his rights to appeal his conviction and sentence directly and challenge them under Section 2255

except on grounds of ineffective assistance of counsel. (Criminal No. 3:15-0009, Document No. 10, p. 5.) It is well established that a defendant may waive his right to appeal or collaterally attack his conviction and sentence if the waiver was entered into knowingly and voluntarily. See United States v. Johnson, 410 F.3d 137 (4th Cir. 2005); Lemaster, 403 F.3d at 220. "To determine whether a waiver is knowing and intelligent, this court examines 'the totality of the circumstances, including the experience and conduct of the accused, as well as the accused's educational background and familiarity with the terms of the plea agreement.'" United States v. Johnson, 480 Fed.Appx. 229, 230 (4th Cir. 2012)(citation omitted). Generally, the waiver is valid and enforceable if a Court fully questions a defendant regarding the waiver of his right to appeal during the Rule 11 colloquy. Id.

The undersigned finds that Movant's plea agreement and appellate waiver were voluntary and intelligent. As stated above, there is no indication that Movant's plea agreement was made unknowingly or unintelligently. Movant initialed each page and signed the last page of the plea agreement, thereby confirming that he had read and discussed every part of the agreement with counsel and voluntarily agreed to the terms. (Criminal Action No. 3:15-0009, Document No. 31.) Further, Movant does not argue that his waiver was made unknowingly or unintelligently. A review of the plea agreement further reveals that the waiver was clear and unambiguous. Specifically, the plea agreement stated, in pertinent part, as follows:

> Mr. Taylor knowingly and voluntarily waives the right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may apply any sentence that exceeds the maximum penalty prescribed by statute. The United States also agrees to waive its right to appeal any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18

18

U.S.C. § 3742(b), except that the United States may appeal any sentence that is below the minimum penalty, if any, prescribed by statute.

Mr. Taylor also knowingly and voluntarily waives the right to challenge his guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

(Criminal Action No. 3:15-00009, Document No. 10, p. 5, ¶ 12.) The undersigned finds no indication that Movant did not understand the terms and consequences of signing the plea agreement. Considering Movant's educational background, the record reveals that Movant obtained his high school diploma. (Id., Document No. 31, p. 2.) Additionally, Movant's criminal history reveals that Movant had some experience with the criminal justice system. (Id., Document No. 55, pp. 19.) During the plea hearing, the terms of the plea agreement were thoroughly reviewed with Movant and he acknowledged that he understood the terms and consequences of signing the plea agreement. (Id., Document No. 31, pp. 32 - 40.) Further, the District Court thoroughly explained the appellate waiver to Movant during the Rule 11 colloquy and Movant acknowledged that he understood and agreed to the waiver. (Id., pp. 36 – 37.) Based on the foregoing, the undersigned finds that Movant's appellate waiver was knowingly and intelligently. Thus, Movant waived his right to challenge the validity of his conviction or sentence. Accordingly, the undersigned respectfully recommends that the District Court determine that Movant's above claim is precluded by his appellate waiver.[4]

---

[4] Notwithstanding the foregoing, the undersigned will briefly consider Movant's claim. Based upon a review of the record, the undersigned finds significant evidence to support the District Court's finding that Movant possessed a firearm. During the sentencing hearing, the United States called the following at witnesses: (1) Domenico Chianesi; (2) Gary McCullough; (3) Brandy Eplion; (4) Kevin Martin; and (5) Detective Adrian Rosario. (Criminal Action

**3.**     **Johnson Claim:**

On June 17, 2016, Movant filed his Amendment to his Section 2255 Motion citing Johnson v. United States, 135 S.Ct. 2251 (2015). (Id., Document No. 71.) Specifically, Movant argues that Johnson applies to his two-point gun enhancement under U.S.S.G. § 2D1.1 (Id.) On October 22, 2018, Movant filed his "Motion to Withdraw Amendment to 28 U.S.C. § 2255 Habeas Corpus Motion for Johnson v. United States, 135 S.Ct. 2251 (2015), Which Has Been Applied to Two-Point Gun Enhancement." (Id., Document No. 108.) In support, Movant states that "after careful research, he realizes that Johnson . . . does not possess any applicability to his case and the application of the two-point gun enhancement under 2D1.1(b)(1)." (Id.)

The issue concerning whether Johnson applies to the Guidelines has now been specifically addressed by the United States Supreme Court. On March 6, 2017, the United States Supreme Court held that the United States Sentencing Guidelines are not subject to a void for vagueness challenge under the Fifth Amendment in light of Johnson v. United States, ___ U.S. ___, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). Beckles v. United States, ___ U.S. ___, 137 S.Ct.

---

3:15-00009, Document No. 57.) Mr. Chianesi, Mr. McCullough, and Ms. Eplion testified that Movant engaged in the sale of heroin at 1002 12th Avenue and 18190 Stout Street, Detroit, Michigan. (Id.) Mr. Chianesi testified that when he bought heroin at 1002 12th Avenue, he saw an individual named Ox with a large pistol that was either a 9mm or .45. (Id., Document No. 57, pp. 30 – 31.) Mr. McCullough testified that he saw a firearm laying out in the bedroom that the Movant used to sell heroin at 242 Sixth Avenue in Huntington. (Id., pp. 59, 65.) Detective Rosario testified that two firearms (two Glock semi-automatic pistols) were located during a search of a residence located at 1002 12th Avenue, Apartment Number 7. (Id., pp. 109-11, 133-36.) Detective Rosario also testified that a firearm was found during a search of 18190 Stout Street in Detroit, Michigan. (Id., pp. 122 - 114, 117.) Specifically, Detective Rosario testified that during the search a TEC-9 pistol "was located underneath the bed where [Movant] was located." (Id., p. 113.) Detective Rosario acknowledged that even though a firearm was located during the search of the Michigan residence, no drugs or large sums of money were located at that time. (Id., p. 133.) Furthermore, the undersigned notes that Movant does not challenge the District Court's finding that Movant possessed a firearm in relation to his drug activity at 1002 12th Avenue.

886, 197 L.Ed.2d 145 (2017). The Supreme Court specifically determined that the "residual clause" of Section 4B1.2(a) was not unconstitutionally vague because that "[u]nlike the ACCA . . . the advisory Guidelines do not fix the permissible range of sentences." Id. The Supreme Court explained that the Guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range," and thus are not subject to a vagueness challenge. Id. Accordingly, the holding of Johnson does not extend to Movant's sentencing enhancement under the Guidelines. Based upon the foregoing, the undersigned respectfully recommends that Movant's "Motion to Withdraw Amendment to 28 U.S.C. § 2255 Habeas Corpus Motion for Johnson v. United States, 135 S.Ct. 2251 (2015), Which Has Been Applied to Two-Point Gun Enhancement" (Document No. 108) be granted.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Movant's Motion to Withdraw Amendment (Document No. 108), **DENY** Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and Second Amendment (Document Nos. 68 and 109), and **REMOVE** this matter from the Court's docket.

Movant is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties

shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Movant, who is acting *pro se*, and counsel of record.

Date: April 2, 2019.

Omar J. Aboulhosn
United States Magistrate Judge